```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF OKLAHOMA

LESLIE R. GANDY,                  )
                                  )
          Plaintiff,              )
                                  )
v.                                )   Case No. CIV-12-115-KEW
                                  )
CAROLYN W. COLVIN, Acting         )
Commissioner of Social            )
Security Administration,          )
                                  )
          Defendant.              )
```

## OPINION AND ORDER

Plaintiff Leslie R. Gandy (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on June 21, 1963 and was 47 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant worked in the past as a deli clerk and assembly press operator. Claimant alleges an inability to work beginning August 21, 2006 due to limitations resulting from neck pain, bursitis in her shoulders, carpel tunnel syndrome, trigger thumb,

back problems, hip problems, gastritis, sleep problems, fatigue, PTSD, anxiety, and depression.

## Procedural History

On September 26, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act.  Claimant's applications were denied initially and upon reconsideration.  After an administrative hearing, ALJ John W. Belcher issued an unfavorable decision on March 4, 2009.  On July 3, 2010, the Appeals Council remanded the case to a different ALJ for further evaluation.  On November 4, 2010, a second administrative hearing was held before ALJ Michael Kirkpatrick.  On December 14, 2010, the ALJ issued an unfavorable decision.  On February 15, 2012, the Appeals Council denied review of the ALJ's decision.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation.  He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work as an

4

assembly press operator.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in failing to consider the opinions of state agency physicians regarding Claimant's mental functioning limitations.

## Consideration of Opinion Evidence

In his decision, the ALJ found Claimant suffered from the severe impairments of degenerative disc disease of the lumbar spine, status post carpel tunnel syndrome release surgery, bursitis of the right shoulder, major depressive disorder, anxiety, panic disorder without agoraphobia, dysthymia, and history of polysubstance abuse. (Tr. 17). The ALJ determined Claimant retained the RFC to lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk 6 hours in an 8 hour workday, and sit 6 hours in an 8 hour workday. He also found Claimant could perform both simple, unskilled tasks, and also detailed, semiskilled tasks, but not complex, skilled tasks. (Tr. 20). After consultation with a vocational expert, the ALJ determined Claimant could perform her past relevant work as an assembly press operator. (Tr. 28).

Claimant contends the ALJ failed to properly evaluate the opinions of state agency physicians regarding her mental functional limitations. On February 8, 2007, Dr. Sally Varghese completed a

5

Mental RFC Assessment form on Claimant.  She determined Claimant was moderately limited in the areas of the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public.  She concluded in her narrative statement that Claimant could perform simple and some complex tasks with normal supervision, could relate to coworkers and supervisors on a superficial basis, and could not tolerate contact with the general public.  (Tr. 501-03).

Dr. Varghese also completed a Psychiatric Review Technique on Claimant of the same date.  She found Claimant suffered from a depressive syndrome characterized by psychomotor agitation or retardation, decreased energy, or difficulty concentrating or thinking.  (Tr. 508).  In regard to functional limitations, Dr. Varghese found Claimant was markedly limited in the area of difficulties in maintaining concentration, persistence, or pace and moderately limited in the area of difficulties in maintaining social functioning.  (Tr. 515).  In her notes, Dr. Varghese found Claimant had impulse control problems, with a history of drug abuse, anger problems, impaired judgment and insight.  She found Claimant's affect was normal, mood was anxious, thought processes were logical, and denied suicidal ideation.  Her activities of daily living included doing light house work cooking, shopping, driving, taking

care of her personal needs, puzzles, going fishing and playing cards. She has a history of depression and alcohol abuse and has difficulty dealing with stressful situations. Her alcohol and drug abuse was not material. (Tr. 517).

On October 19, 2009, Dr. Cynthia Kampschaefer completed a Mental RFC Assessment form for Claimant. Dr. Kampschaefer found Claimant to be moderately limited in her ability to understand and remember detailed instructions and ability to carry out detailed instructions. (Tr. 595). Her notes conclude Claimant could understand, remember, and carry out simple tasks and some complex tasks, could interact appropriately with others at a superficial level and could adapt to a work situation. (Tr. 597).

Dr. Kampschaefer also completed a Psychiatric Review Technique form. She found Claimant to be suffering from a depressive syndrome characterized by sleep disturbance and decreased energy. She also found Claimant to suffer from dysthymia as well as panic disorder without agoraphobia, and a history of polysubstance dependence reportedly in remission. (Tr. 602, 604, 607). Dr. Kampschaefer concluded Claimant was moderately limited in the area of difficulties in maintaining social functioning. (Tr. 609). In her notes, Dr. Kampschaefer found Claimant's thoughts were logical and goal directed. Her mood was slightly anxious and affect was consistent with her mood. She had not suicidal ideations,

7

delusions, or hallucinations. Her concentration, memory, and cognitive ability were intact. She had trouble with serial 3's. Her intelligence was average to low average. Her GAF was estimated at 55 to 60. (Tr. 611).

The ALJ stated that he

> considered the assessments made by the state agency medical and psychological consultants (Exhibits 18F & 21F) and find them consistent with the record evidence. I am therefore adopting the Functional Capacity Assessment (Exhibit 18F) that claimant can perform both simple, unskilled tasks, and also detailed, semi-skilled tasks but not complex, skilled tasks which I find to be supported by the evidence.

(Tr. 28).

Exhibit 18F is the Mental RFC Assessment of Dr. Kampschaefer while Exhibit 21F is the Physical RFC Assessment of Dr. J. Marks-Snelling. The ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must also explain in the decision the weight given to the medical opinions. Soc. Sec. R. 96-6p, 1996 WL 374180. An ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007).

In this instance, the ALJ ignored Dr. Kampschaefer's opinion that Claimant could only interact appropriately with others at a

8

superficial level or explain the reasons he rejected such a restriction. Instead, he appears to have wholeheartedly adopted Dr. Kampschaefer's opinion on limitations while omitting one of her restrictions. Moreover, the ALJ did not address Dr. Varghese's mental limitations including her limitation that she relate to coworkers and supervisors on a superficial basis and that she could not interact with the general public. On remand, the ALJ shall address these opinions, providing the weight given to each, the basis for doing so, and the basis for rejecting their findings of limitations omitted from his decision.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 19th day of September, 2013.

Kimberly E. West
United States Magistrate Judge
Eastern District of Oklahoma